2016 IL App (2d) 140486-B
No. 2-14-0486
Opinion filed May 12, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| *In re* H.L., a Minor | ) | Appeal from the Circuit Court |
| | ) | of De Kalb County. |
| | ) | |
| | ) | Nos. 10-JD-103 |
| | ) | 12-JD-134 |
| | ) | 13-JD-199 |
| | ) | |
| | ) | Honorable |
| (The People of the State of Illinois, Plaintiff- | ) | William P. Brady, |
| Appellee, v. H.L., Defendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1   Beginning in approximately 2010, respondent, H.L., became involved in the juvenile

justice system, admitting to an allegation of mob action, for which he received a five-year term

of probation.   Respondent's behavior would appear to improve, but then respondent would

continue to take backward steps.   In 2012, respondent admitted to an allegation of robbery, for

which he received a modified term of probation to continue until his twenty-first birthday.   In

2013, respondent admitted to a charge of unlawful possession of cannabis, and this time, the

circuit court of De Kalb County sentenced respondent to an indeterminate term in the

Department of Juvenile Justice (Department).

¶ 2    Following this sentence, respondent appealed, arguing that his attorney did not comply with Illinois Supreme Court Rule 604(d) (eff. Feb. 6, 2013), because he had not filed the certificate before or at the time of the hearing on respondent's motion to reconsider his sentence, and that the trial court erred in sentencing him to an indeterminate term in the Department. We agreed with respondent's first contention, and we reversed and remanded the cause for strict compliance with Rule 604(d). *In re H.L.*, 2014 IL App (2d) 140486, ¶ 7 (*H.L. I*). The State appealed, and our supreme court reversed, holding that Rule 604(d) does not require that counsel file a Rule 604(d) certificate at or before the hearing on the defendant's postplea motion. *In re H.L.*, 2015 IL 118529, ¶ 25 (*H.L. II*). The supreme court remanded this case and ordered that we consider the remaining issue on appeal. *Id.* ¶ 27.

¶ 3    In this appeal, respondent's remaining issue is whether the trial court abused its discretion in committing respondent to the Department for an indeterminate term. Respondent argues that the trial court failed to first consider less restrictive alternatives to indeterminate incarceration with the Department and that the trial court failed to address the appropriate factors in passing sentence. We vacate and remand for resentencing.

¶ 4                                    I. BACKGROUND

¶ 5    On May 17, 2010, the State filed a petition for adjudication in case No. 10-JD-103, alleging that respondent was a delinquent minor because he committed the offenses of aggravated battery (720 ILCS 5/12-4(b)(8) (West 2010)) and mob action (720 ILCS 5/25-1(a)(1) (West 2010)). The charges arose from an incident in which respondent was alleged to have struck and kicked another minor in the face and head. On August 12, 2010, respondent pleaded guilty to the offense of mob action, and the trial court sentenced him to a 60-month term of probation. In addition the trial court imposed no-contact and no-gang-activity orders and ordered respondent to complete community service, to participate in school or community activities, to

engage in counseling, to attend school, to complete assessments for substance abuse and anger management, and to follow the resultant recommendations.

¶ 6    In September 2010, the State filed a petition to revoke respondent's probation, based on allegations that respondent committed a battery. Respondent admitted to the petition to revoke, and the State nol-prossed the battery charge. The trial court modified respondent's probation, imposing more conditions.

¶ 7    In May 2012, the State again filed a petition to revoke, this time based on information in respondent's status reports indicating that he had unexcused absences from school and suspensions from school, had made gang-related drawings or graffiti, was using marijuana, and was absent from his home without parental permission. Respondent admitted to the petition to revoke. The trial court modified respondent's probation, adding a five-day term in juvenile detention to be stayed pending respondent's compliance with the other terms of his probation. The trial court also ordered respondent to submit to inpatient substance-abuse and psychiatric evaluations and to follow the recommendations.

¶ 8    On July 23, 2012, the State filed a new petition for adjudication of delinquency against respondent. In case No. 12-JD-134, the State alleged that respondent had committed the offenses of robbery (720 ILCS 5/18-1(a) (West 2012)) and battery (720 ILCS 5/12-3(a)(2) (West 2012)). The charges arose from an incident in which respondent, in answering a Craigslist advertisement, pushed the victim, who was purportedly selling him a ring, snatched the ring out of her grasp, and fled to his home. The trial court ordered a temporary detention. Based on the charges in the new petition for adjudication, the State also moved to revoke respondent's probation and to lift the stays on the detention and electronic-home-monitoring orders that had been entered over the course of respondent's cases. Respondent was eventually released from the temporary detention, and the trial court placed him on electronic home monitoring.

¶ 9    Respondent complied with the ordered services. An August 2012 status report showed that respondent had completed a substance-abuse evaluation and had been placed into an inpatient treatment program. Respondent's September 2012 status report noted that respondent was participating in his inpatient treatment program, which was going well. On September 26, 2012, respondent successfully completed the treatment program, but his prognosis remained "guarded."

¶ 10    On October 2, 2012, respondent pleaded guilty to the robbery charge in case No. 12-JD-134, and respondent admitted to the alleged probation violations in case No. 10-JD-103. On the same date, the State nol-prossed the battery charge in case No. 12-JD-134. The trial court accepted respondent's guilty plea, revoked respondent's probation on the mob-action charge in case No. 10-JD-103, and sentenced respondent on the probation violation and robbery adjudication. The trial court imposed a term of probation extending to respondent's twenty-first birthday, ordered respondent to complete 60 hours of community service, and ordered respondent to pay restitution. The trial court also placed respondent on 45 days of electronic home monitoring. Finally, the trial court ordered respondent to serve a 30-day term of detention in the Kane County youth home, but the detention was stayed pending respondent's compliance with the other terms imposed.

¶ 11    Respondent's December 2012 status report disclosed that respondent was falling into his old behavior patterns. Respondent had written in school that his goal was to become a hardcore gang member, and he had drawn gang symbols. Respondent also had a number of unexcused absences from school and suspensions from school. Respondent had resumed his use of marijuana. Respondent had not obtained the previously ordered psychiatric evaluation.

¶ 12    In January 2013, the State petitioned to revoke respondent's probation and to lift the stay on the 30-day detention. On January 30, 2013, the State amended the petition to revoke, alleging

that respondent was not taking prescribed medication. The trial court closed the case because respondent was not complying with his recommended treatment, he was refusing to participate in urine testing, and he was leaving his home without parental permission and returning home intoxicated. On that same day, the trial court issued a juvenile arrest warrant for respondent, and respondent was arrested within two days. When respondent appeared before the trial court, the court ordered respondent to resume taking his prescribed medication and released him on the most restrictive level of electronic home monitoring.

¶ 13     In February 2013, respondent's status report was not encouraging. Respondent expressly claimed membership in the Latin Kings, and he continued to leave his home without returning before his curfew.

¶ 14     On February 14, 2013, respondent admitted the allegations in the State's petition to revoke: that he drew gang signs at school, that he had received a suspension from school, that he used marijuana, that he committed the offense of unlawful possession of alcohol by a minor, and that he left his home without parental permission. The trial court ended the stay on respondent's 30-day detention, but respondent received a 4-day credit for time spent in custody. The trial court additionally modified respondent's sentence to include an inpatient substance-abuse evaluation for treatment at Gateway and subsequent compliance with any treatment recommendations.

¶ 15     In April 2013, the trial court acknowledged that respondent was participating in the STEPS program. Respondent acknowledged that he had missed three sessions, and respondent was informed that a fourth absence would result in his termination from the STEPS program. Respondent also had received school suspensions and unexcused absences from school, had not completed his previously ordered community service, and had not enrolled in substance-abuse counseling. Because of this noncompliance, the State filed a petition to revoke respondent's

probation. The State subsequently amended its petition to include the allegation that respondent received a suspension from school because he made verbal threats, including a gang reference, to another student.

¶ 16 Before the hearing on the petition, a July 2013 status report indicated that respondent had stopped attending counseling and had stopped taking his prescribed medication. The status report also indicated that respondent still owed fees from earlier adjudications, had been away from his home all day without permission, appeared to be depressed, and had failed to begin his ordered community service.

¶ 17 On July 11, 2013, respondent admitted to the allegations in the petition. The trial court modified respondent's sentence. Respondent was ordered to attend all of his scheduled probation appointments, to participate in intensive substance-abuse treatment, to complete his community service, to attend school, and to attend the STEPS program sessions. Additionally, the trial court ordered respondent's mother to report all of respondent's violations of the terms of his sentence and to otherwise ensure respondent's compliance with his sentence.

¶ 18 A STEPS program midterm report indicated that respondent was making satisfactory progress. However, when respondent missed a fourth session, he was terminated from the STEPS program. Because of his termination from the STEPS program, the State petitioned to revoke respondent's probation.

¶ 19 Early in September 2013, the trial court appointed counsel for respondent and ordered that he be detained following an allegation of domestic battery. Based on the domestic-battery allegation, the State petitioned to revoke respondent's probation. Respondent spent two days in custody, after which the trial court placed him on electronic home monitoring and ordered respondent to attend school.

¶ 20 On September 17, 2013, the State petitioned to revoke respondent's probation, alleging

that respondent committed the offense of unlawful possession of cannabis. Subsequently, the State filed a petition for adjudication in case No. 13-JD-199, alleging that respondent was delinquent for unlawfully possessing not more than 2.5 grams of cannabis (see 720 ILCS 550/4(a) (West 2012)). The State also moved to revoke respondent's electronic home monitoring, and it amended the petition to revoke probation to include allegations of unexcused absences from school and suspensions for making gang gestures and being disrespectful to a teacher. When, in the middle of October, respondent was alleged to have committed criminal damage to property and an adult arrest warrant was issued, the State amended its petition to revoke to include this allegation.

¶ 21    On October 31, 2013, the petition for adjudication came on for hearing. Respondent entered a blind plea of guilty to the cannabis-possession charge in case No. 13-JD-199, and he admitted to the various probation violations alleged in case Nos. 10-JD-103 and 12-JD-134. The State nol-prossed the domestic-battery charge and the remaining counts in the petition to revoke probation. The trial court accepted respondent's guilty plea, advised him of his rights, and ordered a social investigation.

¶ 22    Before the case advanced to sentencing, respondent was cited for a violation of his electronic home monitoring, and he was criminally charged with aggravated battery. Based on the aggravated-battery charge, the State again petitioned to revoke probation. The trial court ordered that respondent be detained. On November 21, 2013, the trial court released respondent on his juvenile cases and ordered him to be placed on electronic home monitoring if he was able to post bond on his criminal cases.

¶ 23    A juvenile investigation report was compiled in anticipation of respondent's sentencing. The report identified offenses occurring between 2009 and 2013. Two charges of aggravated battery and one charge of domestic battery were dismissed. Respondent was sentenced to

probation on charges of mob action and robbery. Respondent had pending criminal cases for the offenses of criminal damage to property and aggravated battery. While respondent was on probation, the State filed 11 petitions to revoke; violations were found in 7 of the petitions to revoke, with 3 still pending. During this time, respondent received services for drug treatment, anger management, and mental health. Respondent successfully completed a 2012 inpatient drug-treatment program, but after that program he continued to use marijuana. Respondent participated in the STEPS program, but, despite making satisfactory progress, he was expelled from the program due to poor attendance.

¶ 24 During the relevant time period, the trial court ordered respondent to be detained seven times, two of which were served in the De Kalb County jail. While on probation, respondent exhibited a generally positive attitude. Nevertheless, respondent continued to engage in serious misbehavior, including threats, assaults, and bullying. Respondent was placed into enhanced probation services because of his many violations. Respondent's probation officer opined in the report that respondent had a high risk of reoffending and had demonstrated an unwillingness to change his behavior, including his gang participation. Ultimately, respondent's probation officer recommended that he be committed to the Department.

¶ 25 A February 2014 status report was prepared. The status report indicated that respondent was making good progress with his therapist. In addition, respondent's school district enrolled him in a homebound program and set up a computer for his use, but, according to the report, respondent had not yet used it.

¶ 26 On February 27, 2014, the case advanced to the sentencing hearing. Respondent's probation officer, Matt Mills, testified that he had completed the juvenile investigation. On February 26, 2014, respondent had tested positive for tetrahydrocannabinol (THC). Mills testified that THC persisted in the body for 30 days and could produce a positive test result

during that time. Respondent had not been tested recently, but some of the positive testing occurred within 30 days of the previous positive test.

¶ 27     Mills testified that respondent was receiving counseling and outpatient treatment from the Ben Gordon Center. Mills consulted respondent's counselor there and learned that, in the counselor's opinion, respondent was positively motivated and had good attendance.

¶ 28     Mills testified that he interviewed respondent. Mills reported that respondent believed that, at the time of each of his offenses, respondent had been highly intoxicated and his intoxication had impaired his judgment. Respondent also believed that he was susceptible to peer pressure, especially when he was using alcohol and marijuana.

¶ 29      Mills testified that, although respondent had been engaged in numerous services during his probations, he had not yet been paired with a mentor from a court-ordered mentoring program. Mills believed that mentoring would likely be helpful to respondent, but Mills was unsure whether mentoring would affect respondent's criminal propensities or gang membership.

¶ 30     Mills opined that respondent had demonstrated remorse for his offenses and appeared to accept responsibility for his actions. Respondent's attitude was positive, and he appeared to be sincerely interested in effecting positive changes to his life. Mills conceded that, in spite of respondent's positive attitude toward changing his life and behavior, respondent nevertheless remained involved with a gang.

¶ 31     Following Mills's testimony, the State asked the trial court to consider respondent's school disciplinary reports and police reports. The State rested.

¶ 32     Respondent testified that he was currently receiving treatment with the personnel at the Ben Gordon Center. Respondent noted that he had been prescribed medication, but he stopped taking the medication because it caused him to have suicidal thoughts. Respondent testified that the counseling he had received at Ben Gordon had been helpful, particularly because he learned

positive ways to cope with stress. Respondent testified that his high school provided him with a computer with which he completed his schoolwork. Respondent also informed the trial court that he had been seeking employment, but he had not yet been successful in obtaining employment.

¶ 33    The parties provided their recommendations for sentencing. The State recommended commitment to the Department for an indeterminate term. The State relied on respondent's continued gang involvement and continued use of marijuana and alcohol, his pending criminal cases, and his numerous probation violations. Respondent recommended that he receive a determinate sentence in the Department, ending in about six weeks on his eighteenth birthday. Respondent relied on the positive steps he had taken during probation to achieve rehabilitation and the fact that he had consistently been remorseful over the offenses he committed. Respondent also noted that, since beginning substance-abuse treatment, he had substantially improved his behavior.

¶ 34    The trial court passed sentence, first providing an oral explanation:

"Okay. These cases all are difficult for a variety of reasons. It is clear that [respondent] has some problems with the use and abuse of illegal substances, but if that's all there was, we wouldn't be talking about going to the Illinois Department of Juvenile Justice. Actually I can recall very clearly his completion of a drug program and everybody was saying things were working out well at that point, and I think that's about a year and a half ago, something like that.

It's being suggested that there's also some mental health issues, but he's not being—no one is seeking to send him to the Illinois Department of Juvenile Justice because of mental health issues. Services have been provided to him regularly over the past few years, some of which he's been cooperative with, some of which not so much,

but the common thread through all these cases, a number of which have ended in violence, are [*sic*] his involvement with gangs and involvement in gang activity. People have been hurt because of that, and that's of a concern to the Court.

I can provide services for drug problems. I can provide services for mental health problems. I can provide services for anger management. I can't provide services for gang involvement, and for whatever reason that constant throughout all these cases tells me that our ability to address this issue locally has failed.

I'm to take into consideration before I sentence somebody to the Department of Juvenile Justice a number of factors. Included among those factors are his age, and he's on the cusp of being an adult. He has been in the system for close to four years now and has a criminal background that is significant in that it does include multiple felony charges.

The Court has had the opportunity to review the educational background, and there's been numerous ups and downs with that as well as *** staying in school because of involvement with the gangs. The Court also has taken into consideration his physical, mental and emotional health and that he has been provided services to address those issues where they have arisen, and what community-based services have been provided I'm to make a determination [whether] he's been compliant. Well, with some of them, yes; with many of the others, no.

I do believe that reasonable efforts have been made to prevent or eliminate the need for [respondent] to be removed from the home and that the removal from the home is in the best interest of the public at large as well as [respondent].

I further find that his parents are unable for a reason other than financial circumstances alone to care for, protect, train or discipline [respondent] and the public

will not be served by placement under [section] 5-740 [of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-740 (West 2014))] and that it is necessary to ensure the protection of the public that he be committed to protect the public from the consequences of his criminal activity.

This is not something that this Court does lightly. It is not something that the Court does often. What is also a threat in those cases where the Court is required to commit the minor is the violence associated with kids involved in gang activity.

I don't know if this commitment will benefit the minor in the future. It is hopeful that the services that are available through the Department of Juvenile Justice will be made available to him and that he'll avail himself of those services. He can choose to continue his involvement with gang activities while there, but eventually he'll get out and find himself back in front of another judge in another courtroom for something else.

It is as a movie [']A Road to Perdition.['] It's something that he has to make sure that he cleanses himself of the taint that is associated with gang activities, and until he's of a mind to make that decision, all the help in the world, all the services in the world won't assist him in living the type of life that we all want.

So I will enter an order committing him to the Illinois Department of Juvenile Justice for an indefinite period of time not to exceed his 21st birthday."

¶ 35    Respondent filed a motion to reconsider, arguing that he had not served a definite term before he was sentenced to the indeterminate term. Respondent argued that a 60-day term would be appropriate based on the charges and violations. In dialog with respondent's counsel, the trial court asserted that it could not place respondent in the youth home for more than 30 days, and it recognized that respondent had spent a total of 69 days in the youth home and in the county jail prior to his current sentencing. The trial court then denied the motion to reconsider, offering the

following reasoning:

> "Well I do realize that the Court focus should not be on incarceration, placing people in jail when you're dealing with minors. That's not a personal belief. That's a legal premise that the Appellate Supreme Court [*sic*] of the state have consistently established.
>
> However, the Courts also made it clear that where the resources of the community have been utilized to try and benefit the minor, that commitment to the Illinois Department of Juvenile Justice is appropriate and the Court can use that as a resource.
>
> Certainly the recommendation of the probation department who had had extensive contact with [respondent] over the course of the years he was on probation was that the resources of the community had been used up and there wasn't anything else that could be utilized. [Respondent], like many minors coming through here, had his hills and his valleys. In other words, there were times when the probation department was—I won't use the word excited but certainly were encouraged with some of the efforts that he made, but following those efforts he would fall back into a pattern that made it clear to the probation department and more importantly made it clear to this Court that our attempts at rehabilitating [respondent], our attempts at encouraging [respondent] to take advantage of all the resources, was falling on deaf ears.
>
> I made the decision to commit him not lightly. I probably in the seven years I've been doing this if I've had ten minors that had to have been committed to the Department of Juvenile Justice that probably is about right. We don't use that, but it is one of those things that you know it when you see it and this was one of those cases based on the charges that brought him before the Court which were significant along with his failure to fully engage himself in all the resources that were made available to him made it clear

that we were not able to benefit him in a way that would make it productive for both him as well as the people in this community.

Based on all that, [respondent's] motion to reconsider is denied. The sentence will stand."

¶ 36 Respondent filed a timely notice of appeal. On that same day, respondent's counsel filed a Rule 604(d) certificate. In *H.L. I*, respondent raised the issues of the timeliness of the filing of the Rule 604(d) certificate and the propriety of the indeterminate sentence; we considered only the certification issue. *H.L. I*, 2014 IL App (2d) 140486, ¶ 1. Our supreme court reversed our decision in *H.L. I*, and it remanded the cause and ordered that we consider respondent's sentencing issue. *H.L. II*, 2015 IL 118529, ¶¶ 25, 27. Accordingly, in this appeal, we consider respondent's arguments on the propriety of the indeterminate sentence.

¶ 37                                    II. ANALYSIS

¶ 38 On appeal, respondent argues that the trial court erred in committing him to the Department for an indeterminate term. Specifically, respondent contends that the trial court did not make an express finding that committing him to the Department was the least restrictive alternative. Respondent also contends that the trial court erred by not considering proper sentencing factors as well as by giving weight to improper sentencing factors.

¶ 39                            A. Standard of Review

¶ 40 We review the trial court's decision to commit a minor to the Department for an abuse of discretion. *In re Ashley C.*, 2014 IL App (4th) 131014, ¶ 22. However, whether the trial court complied with statutory requirements presents a question of law, which is reviewed *de novo* (*id.*); likewise, the application of law to undisputed facts (to the extent that such an issue is presented in this case) is also reviewed *de novo* (*People v. Clark*, 2013 IL App (2d) 120034, ¶ 23).

¶ 41                        B. Least Restrictive Alternative

¶ 42     Respondent argues that the trial court failed to consider less restrictive alternatives, thus failing to properly give effect to section 5-750 of the Act (705 ILCS 405/5-750 (West 2014)). During the pendency of respondent's cases in the trial court, section 5-750 was amended.  Before the 2012 amendment, section 5-750 provided:

> "(1) Except as provided in subsection (2) of this Section, when any delinquent has been adjudged a ward of the court under this Act, the court may commit him or her to the Department of Juvenile Justice, if it finds that (a) his or her parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5-740 or; (b) it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent."  705 ILCS 405/5-750(1) (West 2010).

¶ 43     The amendment to section 5-750 combined subsections (1)(a) and (1)(b) from the 2010 version of the Act and added a new subsection (1)(b), which required the trial court to make an express finding that commitment to the Department is the least restrictive alternative:

> "(1) Except as provided in subsection (2) of this Section, when any delinquent has been adjudged a ward of the court under this Act, the court may commit him or her to the Department of Juvenile Justice, if it finds that (a) his or her parents, guardian or legal custodian are unfit or are unable, for some reason other than financial circumstances alone, to care for, protect, train or discipline the minor, or are unwilling to do so, and the best interests of the minor and the public will not be served by placement under Section 5-740, or it is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent; and (b) commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence that efforts were made to

locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement. Before the court commits a minor to the Department of Juvenile Justice, it shall make a finding that secure confinement is necessary, following a review of the following individualized factors:

> (A) Age of the minor.

> (B) Criminal background of the minor.

> (C) Review of results of any assessments of the minor, including child centered assessments such as the CANS.

> (D) Educational background of the minor, indicating whether the minor has ever been assessed for a learning disability, and if so what services were provided as well as any disciplinary incidents at school.

> (E) Physical, mental and emotional health of the minor, indicating whether the minor has ever been diagnosed with a health issue and if so what services were provided and whether the minor was compliant with services.

> (F) Community based services that have been provided to the minor, and whether the minor was compliant with the services, and the reason the services were unsuccessful.

> (G) Services within the Department of Juvenile Justice that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1) (West 2014).

¶ 44   Respondent argues that the State did not present evidence of its efforts to locate a less restrictive alternative pursuant to the current requirements of section 5-750(1)(b) of the Act (705 ILCS 405/5-750(1)(b) (West 2014)). While the sufficiency of the evidence of a search for a less restrictive alternative might be a debatable issue, there is a more fundamental flaw in the trial

court's February 27, 2014, judgment: namely, the lack of an express finding that commitment to the Department was the least restrictive alternative. The State acknowledges that the trial court "did not explicitly use the terms 'the commitment to the [Department] was the least-restrictive means.' " Our review of the record shows further that the trial court did not purport to make a finding that commitment to the Department was the least restrictive alternative. The question then becomes whether the trial court was required to make such an express finding.

¶ 45 Whether the Act requires a trial court to make a particular finding is a matter of statutory construction, and we review such a construction *de novo*. *In re Henry P.*, 2014 IL App (1st) 130241, ¶ 53. Historically, before the 2012 amendment, courts of review had held that a minor should be committed to the Department only when a less restrictive alternative would not be in the best interests of the minor and the public. *Id.* ¶ 55. When the statute was amended in 2012, the legislature included a requirement that the trial court make an express finding that commitment to the Department would be the least restrictive alternative. *Id.* ¶ 56. The plain language of the Act "states that the trial court may commit [a minor] to the [Department] only if it finds that commitment to the [Department] is the least-restrictive alternative." *Id.* ¶ 57. "In other words, the trial court has discretion to commit [a minor] to the [Department], but it may only do so if it first makes a finding that there are no less-restrictive alternatives to secure confinement available to [the minor]." *Id.* Even if the record might support a determination that no less restrictive alternatives were available for the minor, the plain language of section 5-750(1)(b) clearly requires the trial court to make a finding that commitment to the Department is the least restrictive alternative. *Id.* ¶ 60.

¶ 46 Here, the trial court did not verbally state that it had determined that commitment to the Department was the least restrictive alternative available for respondent in this case. Likewise, it did not provide a written finding that commitment to the Department was the least restrictive

alternative. Further, the court did not state on the form order that commitment was the least restrictive alternative. Indeed, the form order indicated that it was most recently revised in 2011, which perhaps accounts for the fact that the order did not contain a checkbox or line to indicate that commitment to the Department was the least restrictive alternative. Based on our review of the record, we conclude that the trial court did not make the finding required in section 5-750(1)(b) of the Act.

¶ 47     The State acknowledges that *Henry P.* held that, because the trial court did not make the finding that commitment to the Department was the least restrictive alternative, the cause had to be remanded to the trial court to allow it to comply with the provisions of section 5-750(1)(b) of the Act. *Id.* ¶ 62. Indeed, we believe that the circumstances in this case are on all fours with *Henry P.*, and, accordingly, we choose to follow it.

¶ 48     In *Henry P.*, the trial court interpreted the amended section 5-750(1) to require that the trial court make an express finding that commitment to the Department was the least restrictive alternative available for the minor. *Id.* ¶ 57. The trial court there did not make the required finding. *Id.* ¶ 58. The State argued that the amended section 5-750(1) did not actually mandate the trial court to make a written finding or to check a box on a form order indicating that it made the finding. The *Henry P.* court rejected that argument, noting that "the plain language of section 5-750(1)(b) states that the trial [court] must find that commitment is the least-restrictive alternative." *Id.* ¶ 60. The appellate court also distinguished between a requirement that a trial court consider lesser alternatives, which applied in the cases cited by the State, and a requirement that a trial court make a finding. *Id.* The appellate court also distinguished between the question of whether, during sentencing pursuant to the Unified Code of Corrections (730 ILCS 5/5-4-1, 5-8-1 (West 2014)), the trial court is required to state on the record all of the reasons on which a

sentence is based, and the question, like in that case and this case, whether the trial court is required to make a particular finding. *Henry P.*, 2014 IL App (1st) 130241, ¶ 61.

¶ 49 Finally, in *dicta*, the appellate court stated that it was concerned with the effect if it determined "that the trial court made the statutorily required finding based solely on its statement that it considered the issue." *Id.* ¶ 62. The court concluded that "[s]uch a holding would call into question whether express findings are even necessary, which would be in direct conflict with [the] purpose of adding the new requirement to the statute." *Id.* We find this reasoning to be entirely persuasive. Accordingly, we hold that *Henry P.* is directly on point and controls our outcome here: because the trial court did not make the necessary finding that commitment to the Department was the least restrictive alternative, we must vacate the sentence and remand this cause to the trial court with directions to follow the requirements of section 5-750(1) in resentencing respondent.

¶ 50 The State, despite acknowledging the holding of *Henry P.*—that the Act requires the trial court to make an express finding that commitment to the Department is the least restrictive alternative available (*id.* ¶ 60)—contends that we can ignore the fact that the trial court did not make an express finding, because the trial court sufficiently talked around the issue such that we can conclude that it implicitly made the finding. We disagree. While the State correctly notes that we might be able to determine that the trial court considered alternatives, including lesser sentences than commitment to the Department for an indeterminate term, the Act nevertheless requires a finding that "commitment to the Department of Juvenile Justice is the least restrictive alternative based on evidence" (705 ILCS 405/5-750(1)(b) (West 2014)). If we dispense with requiring the trial court to follow the express provisions of the Act, we invite the problems identified in *Henry P.*: allowing the trial court to evade the necessity of making a finding "would call into question whether express findings are even necessary, which would be in direct conflict

with [the] purpose of adding the new requirement to the statute." *Henry P.*, 2014 IL App (1st) 130241, ¶ 62. Thus, accepting the State's position would rewrite section 5-750(1)(b), and this would violate the principles of statutory interpretation. *WKS Crystal Lake, LLC v. LeFew*, 2015 IL App (2d) 150544, ¶ 23 ("[a] court may not, in the guise of interpreting a statute, ignore its plain language and read into it exceptions, limitations or conditions that conflict with the express legislative intent").

¶ 51 In making its implicit-finding argument, the State relies on *People v. Villarreal*, 198 Ill. 2d 209, 227-28 (2001), and *People v. Harding*, 2012 IL App (2d) 101011, ¶ 17, apparently for the proposition that, in certain cases, an implicit finding may suffice despite a statutory provision requiring an express finding. However, both *Villarreal* and *Harding* discuss the unfairness of allowing a defendant to prevail when he has invited the error, and we do not believe that these cases support the State's contention, especially where, as here, respondent consistently challenged the trial court's failure to provide an express finding.

¶ 52 The State also argues that the record supports a finding that commitment to the Department was the least restrictive alternative. We need not consider this argument, because, even if it is true, the trial court did not make that finding. Moreover, the court in *Henry P.* noted that, "although the appellate record may support a determination that there were no less-restrictive alternatives available to [the] defendant, the plain language of section 5-750(1)(b) states that the trial [court] must find that commitment is the least-restrictive alternative." *Henry P.*, 2014 IL App (1st) 130241, ¶ 60. Thus, the *Henry P.* court rejected the State's precise argument here. As we have noted, we believe that *Henry P.* is on point and must be followed. Accordingly, even if the record in this case supports a finding that respondent's commitment to the Department was the least restrictive alternative, the trial court did not actually make such a finding, and the failure to make that finding conflicts with the plain and unambiguous language

of section 5-750(1)(b) of the Act (705 ILCS 405/5-750(1)(b) (West 2014)). Accordingly, we reject the State's contention.

¶ 53   The State also attempts to analogize the requirement that the trial court find that commitment to the Department is the least restrictive alternative pursuant to section 5-750(1)(b) with the requirement that a trial court order the least restrictive alternative in involuntary-commitment cases pursuant to section 3-811 of the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/3-811 (West 2014)). While this might, at first blush, seem to be a reasonable analogy, we note that section 3-811 requires that "[t]he court shall order the least restrictive alternative for treatment which is appropriate." *Id.* By contrast, section 5-750(1)(b) provides that "the court may commit [a minor] to the Department of Juvenile Justice, if it finds that *** (b) commitment to the Department of Juvenile Justice is the least restrictive alternative." 705 ILCS 405/5-750(1)(b) (West 2014). The Mental Health Code mandates the entry of a particular order; the Act, by contrast, requires that the trial court make a particular finding before entering a commitment order. Thus, any analogy to the Mental Health Code is inapposite.

¶ 54   The State also argues that the trial court properly considered the alternatives before deciding on the least restrictive alternative, but was not required to enumerate all of the alternatives considered before making its disposition. This argument conflates the proof presented during the relevant hearing with the trial court's responsibility to make an express finding. The record might support such a finding, but, pursuant to *Henry P.* and the plain and unambiguous language of section 5-750(1)(b), the presence of evidence that would support a finding does not stand in for the trial court actually and expressly making the finding. *Id.*; *Henry P.*, 2014 IL App (1st) 130241, ¶ 57 (a trial court may commit a minor to the Department "only if it finds that commitment to the [Department] is the least-restrictive alternative"). While

enumeration of the alternatives might not need to be comprehensive, there is no avoiding the requirement in section 5-750(1)(b) that the court must make a finding that commitment to the Department is the least restrictive alternative.

¶ 55    The State argues that the trial court made the requisite finding under section 5-750(1)(a): that respondent's parents were unable, for a reason other than financial circumstances alone, to care for, protect, train, or discipline respondent and the best interests of respondent and the public would not be served by placement under section 5-740, or commitment was necessary to ensure the public's protection from the consequences of respondent's criminal activity. While this might be true, it is not the whole story. The trial court is still required to make a least-restrictive alternative finding under section 5-750(1)(b), and despite the presence of a subsection (a) finding, the trial court did not make the necessary least-restrictive-alternative finding pursuant to subsection (b).

¶ 56    Last, the State argues that the purpose of the Act was fulfilled even in the absence of an express finding that commitment was the least restrictive alternative. We disagree. The State only recasts its argument that evidence supporting such a finding can replace the finding itself. Under our reading of section 5-750(1) and *Henry P.*, both evidence and an express finding are necessary to satisfy the Act's requirements. In light of the 2012 amendment to section 5-750, which added the requirement that the trial court make an express finding that the minor's commitment to the Department is the least restrictive alternative, the purpose of the Act could not have been fulfilled where the trial court did not make the necessary finding—no matter how much evidence the State accumulated in support. Accordingly, we reject the State's contention.

¶ 57                    C. Respondent's Remaining Contentions

¶ 58    In light of our determination that the trial court did not comply with the requirements of section 5-750, we need not consider respondent's remaining contentions about the State's efforts

to locate less restrictive alternatives, the factors enumerated in section 5-750(1), and the court's reliance on respondent's gang membership.

¶ 59                               III. CONCLUSION

¶ 60     For the foregoing reasons, the sentence of the circuit court of De Kalb County is vacated and the cause is remanded for resentencing fully in compliance with the Act and consistent with this opinion.

¶ 61     Vacated and remanded with directions.