# Illinois Official Reports

## Appellate Court

---

### *In re J.M.A.*, 2019 IL App (3d) 190346

---

| | |
|---|---|
| Appellate Court Caption | *In re* J.M.A., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. J.M.A., Respondent-Appellant). |
| District & No. | Third District<br>No. 3-19-0346 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | December 17, 2019<br><br>December 31, 2019<br>December 31, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 18-JD-113; the Hon. Theodore G. Kutsunis, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Dimitri Golfis, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Dora Villarreal, State's Attorney, of Rock Island (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1    Respondent, J.M.A., pled guilty to a number of felony offenses and was adjudicated delinquent. The circuit court subsequently sentenced him to a term in the Illinois Department of Juvenile Justice (IDOJJ). On appeal, respondent challenges only his sentencing. First, respondent contends the trial court failed to make an express finding that commitment to the IDOJJ was the least restrictive sentencing alternative. Next, respondent contends that even if the court did make the required finding, that finding was improper in that it was unsupported by any evidence of efforts to find less restrictive alternatives or any explanation of why such efforts were unsuccessful. Third, respondent argues that no evidence was introduced tending to show that services available through the IDOJJ could meet respondent's individualized needs. Finally, respondent also argues that the court erred in ordering certain restitution. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The State filed a petition of delinquency on August 15, 2018, that alleged respondent had violated the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2018)). Specifically, the petition alleged that respondent committed the offense of unlawful possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2018)) in that he knowingly possessed a motor vehicle belonging to Serina Natalino while knowing said vehicle to be stolen.

¶ 4    On August 22, 2018, the State amended the delinquency petition to add eight additional counts. Count II of the amended petition charged respondent with theft (720 ILCS 5/16-1(a)(4) (West 2018)), alleging that respondent obtained unauthorized control over an iPad belonging to Kim Rodgers. The petition alleged that the iPad had "a total value in excess of $500." Count IV charged respondent with unlawful possession of a stolen firearm (*id.* § 24-3.8). Count VI charged respondent with a second count of unlawful possession of a stolen vehicle. Count VII charged respondent with a second count of theft, alleging that respondent obtained unauthorized control over an iPhone belonging to Melissa Greenwood.

¶ 5    On September 11, 2018, counsel for respondent informed the court that respondent would be pleading guilty to counts IV, VI, and VII. Pursuant to an agreement with the State, the remaining charges would be dropped. The State clarified: "The other counts are being dismissed at sentencing but used in aggravation and *** restitution. There's restitution." The court asked respondent if that was his understanding of the agreement, and he responded affirmatively. The court accepted respondent's plea.

¶ 6    A social history report was filed on October 5, 2018. The report detailed respondent's criminal record, which included multiple incidents of theft or attempted burglary. Respondent had twice been placed on juvenile probation in Iowa. The latter of those terms of probation included requirements for tracking and monitoring. The report also listed respondent's frequent police contacts, all of which occurred in 2017 or 2018. Those contacts also included multiple

occasions in which respondent had run away from home. In 2017, respondent was placed in the custody of his mother in an "Enhanced in Home Detention Program," which included ankle bracelet monitoring. The report indicated that respondent "physically removed the monitoring device *** from his person and absconded."

¶ 7 Regarding respondent's mental health, the social history report indicated respondent had been diagnosed with attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder. Respondent was currently prescribed Focalin and mirtazapine. His mother opined that when respondent "is not on his meds it just seemed like everything would go wrong." After receiving a mental health assessment in July 2018, it was recommended that respondent "engage in psychiatry services in order to stabilize and manage his mental health symptoms." Respondent and his mother reported that respondent had bipolar disorder, though the report indicated that no documentation had been provided in support of that claim. No issues with alcohol or substance abuse were reported.

¶ 8 The social history report recommended an indeterminate sentence in the IDOJJ. The report stated: "The minor can receive services to address poor decision making skills in a highly structured and confined setting."

¶ 9 The circuit court held a sentencing hearing on November 2, 2018. The State presented no evidence in aggravation other than the social history report. Respondent's mother, R.A., testified that he had been diagnosed with bipolar disorder, oppositional defiant disorder, and ADHD. She testified that she and respondent had frequently missed respondent's mental health appointments because of financial issues. R.A. was not currently employed. If respondent was released into her custody, she would see to it that he attended psychiatric evaluations with Dr. Robert Young—appointments that she believed would be covered by her insurance plan. She would also keep respondent confined in a manner that the probation department saw fit and would ensure that respondent took his medication. R.A. also detailed the steps she had taken to remove negative influences from respondent's life, including moving so that respondent would not be around the other juveniles with whom he frequently found trouble. R.A. believed that families she had met in the new area would be positive influences on respondent. She had a job set up for respondent at Chick-fil-A.

¶ 10 The circuit court determined that respondent should be made a ward of the court. In imposing sentence, the court began by recounting respondent's lengthy criminal history. The court concluded:

"I've reviewed the social history and the—and the addendums. I've looked at the alternatives that could be imposed, and I'm finding the commitment to the [IDOJJ] is necessary to ensure the protection of the public from the consequences of criminal activity of the delinquent. I'm finding that reasonable efforts have been made to prevent or eliminate the need for the minor to be removed from the home. I'm finding that secure confinement is necessary after I reviewed the following factors: The age of the minor; the criminal background of the minor; the review of any results and assessments of the minor; the educational background of the minor including whether he was ever assessed for a learning disability, and, if so, what services were provided as well as any disciplinary incidents at school; the physical, mental, and emotional health of the minor indicating whether the minor has ever been diagnosed with a health issue, and, if so, what services were provided and whether the minor was compliant with the services;

community services that have been provided to the minor and whether he was compliant with those services and whether they were successful.

I'm finding that the services within the [IDOJJ] will meet the individualized needs of the minor."

¶ 11 The court sentenced respondent to an indeterminate term of up to seven years in the IDOJJ, or until respondent's twenty-first birthday. The court also ordered restitution be paid to Natalino and Greenwood in the amounts of $853 and $2003.25, respectively. With respect to restitution to Rodgers, the State requested "that the iPad be returned to minimize any sort or restitution that would be sought. We're not asking for any at this time, but if she gets the iPad back sooner, *** that's less that she'd be asking for."

¶ 12 The court subsequently filed a written order reflecting the sentence. The written order is a preprinted form with certain boxes checked and certain blank lines filled in by hand. The preprinted title of the form is "Order of Commitment to the [IDOJJ]." Item No. 4 on the form, located under the heading "The Court Finds:" is the following preprinted paragraph:

"Commitment to the [IDOJJ] is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and those efforts were unsuccessful because:"

Following the colon are three page-width, blank lines. On the form filled out in this case, those lines have been left blank. In the restitution section of the sentencing order, in addition to setting out the monetary sums for Natalino and Greenwood, the court wrote: "Reserved for Kim Rodgers."

¶ 13 Respondent filed a motion to reconsider sentence in which he argued that no evidence had been introduced showing reasonable efforts that had been taken to prevent respondent's removal from the home or that efforts toward less restrictive confinement had been made. He also asserted that no evidence had been introduced showing that commitment to the IDOJJ would meet respondent's individualized needs.

¶ 14 A hearing on respondent's motion was held on January 24, 2019. The State argued that the circuit court was free to take judicial notice of the various services provided by the IDOJJ, adding: "Through Your Honor's tenure on the bench *** there are things that are regularly brought to the Court's attention as to the services that are available *** and the Court does take notice and the court did take notice of the services that are available in the [IDOJJ] ***."

¶ 15 In denying the motion to reconsider, the court stated:

"The minor is asking the Court to basically not sentence to the [IDOJJ] because the least restrictive services were not attempted. Are we saying just on this specific case or can I look at the whole history of this minor or short history? He's been on probation in two states—or out of the state of Iowa. Did not work. He was unsuccessfully discharged. And while on probation, he was committed or at least implicated in other crimes. Twice he was put on home detention with an ankle bracelet and twice he removed the ankle bracelet and fled and ran away, possibly committing other crimes.

The mother reported him missing several times, saying she couldn't control him, that he wouldn't listen to her, and now because of the fact that she quit her job, if I'm understanding what's in the motion correctly, she would be able to commit her full time to the son—to her son. I don't know. There's no history of that that I can see from the social history, that she's been ever able to do that or ever has done that successfully.

- 4 -

* * *

    The family is dysfunctional. I believe they have attempted these least strenuous or severe sentences to try to rehabilitate him, you know, for the protection of the public, even though a sentence to a secure facility like Mary Davis could be in order. The time periods that he would have to be there I don't think is long enough for him to address the issues that he really needs to address. He needs a structured environment. Structured environment is provided by the [IDOJJ]. He needs to be rehabilitated from his bad behavior issues. He needs to improve in his decisionmaking. And I think *** for the protection of the public and in some instances for him, because of the type of behavior he's engaging in, I think it is the most reasonable sentence that this court could impose under all the circumstances ***."

¶ 16    On appeal, this court remanded the matter for proceedings in strict compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *In re J.M.A.*, No. 3-19-0058 (2019) (unpublished dispositional order).

¶ 17    On June 14, 2019, counsel filed the same motion to reconsider, as well as a certificate under Rule 604(d). At the ensuing hearing, the court noted that respondent was raising the same arguments as at the previous hearing. The State argued that the IDOJJ files annual reports listing in great detail its facilities and the programs available in each facility. The State argued that those reports are publicly available and that "[t]he Court has access to it" and "is aware of" the IDOJJ's services.

¶ 18    The court again denied the motion to reconsider. It appears that in doing so, the court simply read the transcript of its comments from January 24, 2019. The record reflects that the comments are nearly identical with those made earlier, with the word "again" occasionally added. After again commenting that respondent needed a structured environment, the court stated: "He needs to be rehabilitated from his bad behavior issues, and I think they do have the services to try to do that."

¶ 19                        II. ANALYSIS

¶ 20    On appeal, respondent argues that the sentence imposed by the circuit court failed to comply with the requirements of the Act in multiple distinct ways. First, he argues that the court failed to make an express finding that commitment to the IDOJJ was the least restrictive sentencing alternative. Second, respondent argues that even if the court *did* make the required finding, it was improper because "[t]here was not evidence of efforts to locate less restrictive alternatives to secure confinement in IDOJJ and the court did not explain why such efforts were unsuccessful." Third, respondent argues that no evidence was before the court concerning the availability of services within IDOJJ that would meet respondent's individualized needs. Finally, unrelated to the Act, respondent argues that the court's restitution order was erroneous on multiple grounds.

¶ 21    Section 5-750 of the Act sets forth the requirements attendant to the commitment of a minor to the IDOJJ. It provides that a court may sentence a minor to the IDOJJ "if it finds that *** (b) commitment to the [IDOJJ] is the least restrictive alternative based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement." 705 ILCS 405/5-750(1)(b) (West 2018). The same subsection mandates that "[b]efore the court commits a minor to the [IDOJJ], it shall make a finding that secure confinement is necessary,

following a review of the following individualized factors." *Id.* Seven factors follow, the last of which is "Services within the [IDOJJ] that will meet the individualized needs of the minor." *Id.* § 5-750(1)(b)(G).

¶ 22    With these requirements in mind, we address respondent's arguments.

### A. Least Restrictive Alternative Finding

¶ 24    A court may not sentence a minor to the IDOJJ unless it finds that such a commitment is "the least restrictive alternative." *Id.* § 5-750(1)(b). The State concedes that the circuit court at sentencing "did not expressly state that commitment to the [IDOJJ] was the least restrictive alternative available to respondent." However, the State maintains that the court made the required finding in its comments upon denial of respondent's motion to reconsider sentence. While the State admits that the court never used the actual words contemplated by the Act, it argues that the comments as a whole "clearly show" that the court felt commitment to the IDOJJ would be the least restrictive alternative.

¶ 25    Upon denying the motion to reconsider sentence, the court explicitly contemplated a number of less restrictive options. For example, the court pointed out that respondent had been placed on probation on two prior occasions and had been discharged as unsuccessful each time. Thus, probation was not a viable alternative. Further, the court noted that respondent had been placed on in home detention with ankle bracelet monitoring twice before but had removed his ankle bracelet and absconded. Thus, such a sentence was clearly not a viable alternative here. The court also expressed skepticism concerning respondent's mother's ability to "control" respondent, citing her failed attempts to do so in the past. Finally, the court observed that while a term in the Mary Davis detention home "could be in order," it dismissed that possibility on the apparent grounds that the time respondent could spend at Mary Davis would not be sufficient to "address the issues that he really needs to address."[1] The court concluded that a term in the IDOJJ was "the most reasonable sentence that [the] court could impose under all the circumstances."

¶ 26    In sum, the circuit court methodically considered the most viable alternatives to a term in the IDOJJ. After considering those less restrictive alternatives, the court dismissed them as possibilities, often because previous attempts to impose those less restrictive alternatives had failed. It is clear from the court's commentary that it found sentencing respondent to the IDOJJ to be the least restrictive alternative it could reasonably impose.

¶ 27    To be sure, the court never explicitly stated: "I find that a commitment to the IDOJJ is the least restrictive alternative." Respondent insists on appeal that such an *express* finding is mandated by the Act. In support, respondent relies upon the cases of *In re H.L.*, 2016 IL App (2d) 140486-B, and *In re Henry P.*, 2014 IL App (1st) 130241. Each of those cases, however, is distinguishable from the instant matter.

¶ 28    In *H.L.*, 2016 IL App (2d) 140486-B, ¶ 34, the court made no reference to less restrictive alternatives in sentencing the respondent. The State conceded that the court did not expressly make the required finding, and the court rejected its argument that "the trial court sufficiently

---

[1]Placement in a juvenile detention home is limited to "a period not to exceed 30 days." 705 ILCS 405/5-710(1)(a)(v) (West 2018). That limit is extendable only "for a minor under age 15 committed to the Department of Children and Family Services." *Id.* Defendant was 15 years old at the time of sentencing.

talked around the issue such that [the appellate court] can conclude that it implicitly made the finding." *Id.* ¶ 50. The reviewing court pointed out that the circuit court, in imposing the sentence, did not even "purport to make a finding that commitment to the [IDOJJ] was the least restrictive alternative." *Id.* ¶ 44.

¶ 29 Similarly, in *Henry P.*, 2014 IL App (1st) 130241, ¶ 40, the circuit court made no reference at sentencing to less restrictive alternatives. The State argued that the reviewing court could "infer from the appellate record that the trial court found that commitment was the least-restrictive alternative." *Id.* ¶ 59. The First District rejected that argument, pointing out that whether the record would support such a determination was irrelevant; what mattered was whether the circuit court found commitment to the IDOJJ to be the least restrictive alternative. *Id.* ¶ 60.

¶ 30 In the present case, the circuit court did not "talk[ ] around" the issue of less restrictive alternatives. The court's opinion need not be inferred. We need not resort to the record to determine if such a finding could have been plausible. The circuit court in this case made its intentions clear. It expressly discussed a number of sentencing alternatives, as well as the reasons that those less restrictive alternatives were not viable. The courts in *H.L.* and *Henry P.* did no such thing.

¶ 31 Insofar as either *H.L.* or *Henry P.* may be read as requiring the explicit recitation of certain words—"I find that a commitment to the IDOJJ is the least restrictive alternative"—we disagree with those rulings. Such a requirement improperly elevates form over substance. The court in this case provided a detailed explanation of less restrictive alternatives and the reasons they were inappropriate for respondent. Not only is this course acceptable under the Act, but we submit that it is actually *preferable* to a bare recitation of the "magic words" without any further explanation.

¶ 32                                   B. Least Restrictive Alternative Evidence

¶ 33 The Act requires that a least-restrictive alternative finding be "based on evidence that efforts were made to locate less restrictive alternatives to secure confinement and the reasons why efforts were unsuccessful in locating a less restrictive alternative to secure confinement." 705 ILCS 405/5-750(1)(b) (West 2018). Respondent next argues that any finding made by the circuit court was not based on any evidence of efforts to locate less restrictive alternatives and that the court did not explain why such efforts were unsuccessful.

¶ 34 As explained above, the court considered a number of sentencing alternatives less restrictive than commitment to the IDOJJ. Namely, it considered probation, in-home detention with ankle bracelet monitoring, confinement in a secure juvenile facility, and release of respondent to his mother's custody. Evidence relating to the viability of each of these alternatives was found in the social history report, as well as the testimony of respondent's mother concerning her ability to provide the proper environment for respondent. The court found that probation and in home detention with monitoring had been demonstrably unsuccessful in the past. Confinement in the Mary Davis home would not provide a term of sufficient length, and past history cast doubt upon the viability of remanding respondent to his mother's custody. Each of these determinations were properly based on evidence before the court.

¶ 35 Respondent contends, however, that the circuit court only considered evidence relating to a mere fraction of potential sentencing alternatives. He points to section 5-710 of the Act,

which enumerates 11 sentencing alternatives aside from commitment to the IDOJJ. *Id.* § 5-710(1). Of these 11 alternatives, respondent identifies some—which he refers to as alternatives of "intermediate severity"—that the circuit court did not consider. Among these, respondent points to placement in the legal custody of a person besides the parent (*id.* § 5-740(1)), substance abuse treatment, or impact incarceration (55 ILCS 5/3-6039 (West 2018)).

¶ 36    The flaw in respondent's argument is illustrated by the limited list of alternatives he suggests the court should have considered. For example, the court also failed to discuss emancipation, removal of driving privileges, or tattoo removal when imposing sentence. It appears that no evidence was introduced bearing on the viability of any of those less restrictive alternatives. Of course, even respondent does not argue error was committed there. This is because section 5-750 of the Act should not and cannot be read as requiring the court hear evidence of and consider every possible alternative (and subpart thereof) enumerated in section 5-710.

¶ 37    Indeed, the plain language of section 5-750 requires only that the court hear "evidence that efforts were made to locate less restrictive alternatives *** and the reasons why [such] efforts were unsuccessful." 705 ILCS 405/5-750(1)(b) (West 2018). The court heard such evidence. While it is true that the court did not receive evidence pertaining to every conceivable sentencing option, the Act did not require that it do so. It is sufficient where, as here, the court takes evidence relating to the most viable or plausible less restrictive alternatives and explains why efforts to employ such alternatives were or would be unsuccessful.

¶ 38                              C. Respondent's Individualized Needs

¶ 39    Section 5-750(1) of the Act mandates that the circuit court, in sentencing a minor to a term of commitment in the IDOJJ, must conduct a review of seven factors. *Id.* The seventh of the listed factor is: "Services within the [IDOJJ] that will meet the individualized needs of the minor." *Id.* § 5-750(1)(b)(G). Respondent argues that the court failed to conduct such a review prior to sentencing him to the IDOJJ. Specifically, respondent contends that the court failed to consider his individualized mental health needs and did not hear any evidence of IDOJJ services that might meet those needs.

¶ 40    The social history report, submitted into evidence at sentencing, indicated that respondent struggled with poor decision-making. The report noted that "[t]he minor can receive services to address poor decision making skills" in the IDOJJ. The court subsequently found that services within IDOJJ would meet respondent's individualized needs. Thus, the court received evidence that respondent had the individualized need of correcting his poor decision-making. The court received evidence that services that would allow respondent to build those decision-making skills were available in the IDOJJ. The court rationally synthesized that evidence in finding that services within the IDOJJ would address respondent's individualized needs. The court properly conducted the review mandated by the Act.

¶ 41    Respondent maintains that this review was insufficient on two separate grounds. First, he argues that the juvenile intake officer who authored the social history report was merely expressing his opinion and that his "opinion that IDOJJ has services was not evidence." This argument is not well taken. The juvenile intake officer is in a far better position than the court itself to speak to respondent's needs, as well as the services available within the IDOJJ. The officer stated directly in the social history report that the required services were available. This can no more be dismissed as mere opinion rather than evidence than could any trial testimony.

While neither the social history report nor the court described the minute details of the services, the Act does not require as much. It is sufficient that the evidence showed such services were available.

¶ 42 Next, respondent maintains that "poor decision making skills" cannot be considered an individualized need because "every minor committed to [the] IDOJJ likely has poor decision-making skills and bad behavior; otherwise, they would not have committed a crime in the first place." We do not doubt the potential that many minors serving terms in the IDOJJ do, or at some point did, suffer from poor decision-making. That fact, however, does not render poor decision-making any less of a concern for respondent. Consideration of "individualized" needs does not require consideration of needs that are wholly unique to each person.

¶ 43 Respondent also argues that the court failed to consider his mental health needs, and that no evidence was presented concerning the nature or types of services available through the IDOJJ to address those needs.

¶ 44 Defendant's initial argument was that the court did not conduct the review of his individualized needs and IDOJJ services, as required by statute. We rejected that argument, and concluded that the court did, in fact, conduct the necessary review. Here then, defendant argues that any such review was insufficient in scope or depth. We are unaware of any case in which a reviewing court has reversed a sentence to the IDOJJ on such a basis. Respondent cites none. Indeed, we suspect that a respondent will always be able to identify on appeal some individualized need that went unmentioned at the trial level, no matter how in-depth that court's discussion.

¶ 45 To be sure, the record makes clear that respondent had been previously diagnosed with oppositional defiant disorder. Though he had seen psychiatrists from time to time, it does not appear that such visits were ever a routine part of his life. Importantly, the social history report did not contain any indication of a nexus between respondent's mental health issues and the behavior for which he was being sentenced. The circuit court here could have rationally concluded from the evidence that respondent's primary issue was one with decision-making and that issue merited the most consideration. In any event, this issue is a mere technicality, and the IDOJJ plainly, and perhaps even obviously, offers services for mental health. See *Types of Programming Provided to Youth*, Ill. Dep't of Juvenile Justice, https://www2.illinois.gov/idjj/Pages/faq.aspx (last visited Dec. 31, 2019) [perma.cc/A2J3-5NZL].

¶ 46                                                   D. Restitution

¶ 47 In his final argument, respondent contends that the circuit court erred in ordering as restitution payment to Natalino and the return of an iPad to Rodgers, as the charges relating to those victims were dropped by the State. Separately, respondent argues that the court's act of reserving the issue of additional restitution to Rodgers was also error. Defendant concedes that he has not preserved either of these issues but argues that they amount to plain error.

¶ 48 The first step in any plain-error analysis is to determine whether a clear, obvious, or plain error has been committed. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). If we find that a clear or obvious error has occurred, it is respondent's burden to demonstrate that the error was prejudicial and thus reversible. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). While this showing may be made under the first or second prong of plain error (*e.g.*, *People v. Darr*, 2018 IL App (3d) 150562, ¶¶ 49-50), respondent raises only the second prong here. In the context of sentencing, an error is reversible under the second prong where that error "was so

egregious as to deny the defendant a fair sentencing hearing." *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). More generally, the second prong applies where the error committed "was so serious it affected the fairness of the trial and challenged the integrity of the judicial process." *People v. Sebby*, 2017 IL 119445, ¶ 50.

¶ 49    Section 5-710(4) of the Act provides that the circuit court may order a minor "to make restitution, in monetary or non-monetary form, under the terms and conditions of Section 5-5-6 of the Unified Code of Corrections [(Unified Code)]." 705 ILCS 405/5-710(4) (West 2018). In turn, section 5-5-6 of the Unified Code provides:

> " In instances where a defendant has more than one criminal charge pending against him in a single case, or more than one case, and the defendant stands convicted of one or more charges, a plea agreement negotiated by the State's Attorney and the defendants may require the defendant to make restitution to victims of charges that have been dismissed or which it is contemplated will be dismissed under the terms of the plea agreement, and under the agreement, the court may impose a sentence of restitution on the charge or charges of which the defendant has been convicted that would require the defendant to make restitution to victims of other offenses as provided in the plea agreement." 730 ILCS 5/5-5-6(d) (West 2018).

¶ 50    Respondent's counsel first informed the court of a negotiated plea at a hearing held on September 11, 2018. After respondent's counsel detailed the terms of the plea, the State added: "the other counts are being dismissed at sentencing but used in aggravation and *** restitution. There's restitution." When asked if that comported with his understanding of the negotiated plea, respondent responded affirmatively.

¶ 51    We note that respondent fails to address the State's comments in which it explicitly stated that the dismissed charges would be used for restitution purposes. He does not include those comments in his factual summary, nor does he address them in reply after the State raised them in its brief.

¶ 52    Section 5-5-6(d) of the Unified Code plainly contemplates the precise situation at issue here. It provides that, as part of a plea agreement, the State may still seek restitution to the victims of offenses where the charges related to those offenses have been dropped. The record reflects that the State indicated that under its agreement with respondent it intended to do just that. Respondent affirmed his understanding of the agreement. Accordingly, we find that no error was committed.

¶ 53    We next address defendant's separate argument that the court's reservation of the issue of additional restitution to Rodgers was improper.

¶ 54    This court has previously found that the reservation of the issue of restitution is not a power available to the circuit court under section 5-5-6 of the Unified Code, and thus requires reversal. *People v. Jones*, 176 Ill. App. 3d 460, 465-66 (1988). The Fourth District has reached the same conclusion, referring to a restitution order reserving restitution as "an invalid order." *People v. Stinson*, 200 Ill. App. 3d 223, 224 (1990). More recently, and in a case involving a minor, the Fourth District opined that "*Generally*, restitution must be ordered at the time of the dispositional hearing after a minor has been found delinquent." (Emphasis added.) *In re M.Z.*, 296 Ill. App. 3d 669, 673 (1998). There the court found that the specific factual circumstances of that case warranted a reserved restitution order.

¶ 55    In the present case, defendant was initially charged with being in possession of Rodgers's stolen iPad, valued at over $500. The State indicated at sentencing that the return of the iPad would be significantly less expensive for respondent, in terms of restitution. Indeed, it is unclear that Rodgers would be entitled to any monetary restitution if the iPad were returned. The circuit court could simply have ordered respondent to pay Rodgers the value of the iPad. By instead reserving monetary restitution so that respondent could return the iPad, the court made a judgment very much to respondent's benefit.

¶ 56    Even if the present restitution order is considered error under the early precedents described above, it does not amount to second-prong plain error. Rather than being "so egregious as to deny the defendant a fair sentencing hearing" (*Hillier*, 237 Ill. 2d at 545), the "error" was actually *more* fair to respondent. Allowing the 15-year-old respondent to return the property, rather than imposing a bill of more than $500, reflects quite well on "the integrity of the judicial process." *Sebby*, 2017 IL 119445, ¶ 50. Accordingly, we find no plain error.

¶ 57                                  III. CONCLUSION
¶ 58    For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 59    Affirmed.

¶ 60    JUSTICE McDADE, dissenting:
¶ 61    In sentencing respondent to a term in the IDOJJ, the circuit court did not comply with two statutory mandates set forth in the Act. Those failures necessitate that respondent's sentence be vacated and the matter remanded for resentencing. I therefore respectfully dissent.

¶ 62    First, the circuit court failed to find that a term in the IDOJJ was the least restrictive sentencing alternative for respondent, as required by the Act. 705 ILCS 405/5-750(1)(b) (West 2018). Multiple courts have concluded that this requirement of the Act may only be satisfied with an express or explicit finding by the court. *Henry P.*, 2014 IL App (1st) 130241, ¶¶ 59-60; *H.L.*, 2016 IL App (2d) 140486-B, ¶ 52. The court in this case did not make such a finding at the original sentencing hearing and did not make such a finding upon respondent's motion for reconsideration.

¶ 63    The majority contends that *Henry P.* and *H.L.* are distinguishable. It maintains that the court in those cases failed to even discuss less restrictive alternatives, while the court in this case "methodically considered the most viable alternatives to a term in the IDOJJ." *Supra* ¶ 26. This is a distinction without a difference. The Act does not mandate merely that the court consider other alternatives. It requires that the court *find* that commitment to the IDOJJ is the *least* restrictive alternative. 705 ILCS 405/5-750(1)(b) (West 2018). While the court here certainly set the groundwork for such a finding, it never actually offered an affirmative decision.

¶ 64    The majority remarks that, regarding whether a term in the IDOJJ was the least restrictive sentencing alternative, "[t]he [circuit] court's opinion need not be inferred." *Supra* ¶ 30. This is demonstrably false. The court never directly stated that it found a term in the IDOJJ to be the least restrictive alternative. The majority, in fact, infers that finding from the court's commentary.

- 11 -

¶ 65    Requiring the circuit court to expressly make a least restrictive alternative finding does not "elevate[ ] form over substance." *Supra* ¶ 31. It merely applies the plain language of the statute. It ensures that no minor will be sentenced to the IDOJJ where less restrictive alternatives are available. It also saves the appellate court from the need to divine the meaning behind the circuit court's various connotations and insinuations. For all of that, the requirement does not impose an onerous burden on the court: Satisfied that a sentence to the IDOJJ is, in fact, the least restrictive alternative, the circuit court need simply say as much, and the Act is satisfied. Because the court failed to comply with the Act by failing to make a least restrictive alternative finding, I would remand the matter for resentencing.

¶ 66    I would also find that the court violated the Act in a distinct second way. Specifically, the Act requires that the court, before sentencing a minor to a term in the IDOJJ, review "[s]ervices within the [IDOJJ] that will meet the individualized needs of the minor." 705 ILCS 405/5-750(1)(b)(G) (West 2018). The court here conducted no such review; if it had, it surely would have reached the conclusion that no evidence concerning the IDOJJ services that might meet those needs was ever introduced.

¶ 67    The majority finds that "[t]he court properly conducted the review mandated by the Act." *Supra* ¶ 40. At the initial sentencing hearing, the court's entire commentary on the matter amounted to the following: "I'm finding that the services within the [IDOJJ] will meet the individualized needs of the minor." At the hearing on respondent's motion for reconsideration, the court added: "He needs to improve in his decisionmaking." These comments are insufficient on their face. To find that such bromides satisfy the "individualized need" requirement set forth in the Act is to render that statutory requirement utterly meaningless.

¶ 68    The majority also points out that the social history report in this case indicated that respondent struggled with poor decision-making, and indicated that services available within the IDOJJ would allow him to address those problems. The Act, however, requires a "review" of "[s]ervices within the [IDOJJ]." 705 ILCS 405/5-750(1)(b)(G) (West 2018). Not only did the social history report not identify or discuss any particular services in the IDOJJ, the circuit court did not even reference specifically that services in the IDOJJ could help respondent with his decision-making. It strains credulity and common sense to construe the brief comments of the court as a "review" of any services.

¶ 69    Finally, I would note that the record before us is replete with references to respondent's mental health struggles. Regarding respondent's mental health, the social history report indicated respondent first began seeing a psychiatrist in 2007, when he was three years old. At that time, he was diagnosed with oppositional defiant disorder. In 2009, he was diagnosed with ADHD. He received further psychiatric evaluations in 2009, 2013, and 2018. Respondent and his mother reported that respondent had bipolar disorder. Respondent was currently prescribed Focalin and mirtazapine. The social history report recommended that respondent "engage in psychiatry services in order to stabilize and manage his mental health symptoms."

¶ 70    The majority dismisses these concerns, remarking that respondent "had seen psychiatrists from time to time" and that there was no "indication of a nexus between respondent's mental health issues and the behavior for which he was being sentenced." *Supra* ¶ 45. Yet the social history report also indicated that respondent had many psychiatrist appointments that he was unable to attend due to transportation or financial issues. Further, the report relayed a 2018 mental health assessment that read: "The minor's mother reported that his behavior was horrible. She reported that when he is not on his meds it just seemed like everything would go

wrong." The social history report consistently discusses oppositional defiant disorder and ADHD as *behavioral* issues.

¶ 71 Respondent undeniably suffers from mental health issues that impact his behavior. The circuit court made no reference to these issues. There was no evidence put before the court concerning any services within the IDOJJ that might help respondent with these issues. The court thus violated the Act when it sentenced respondent to a term in the IDOJJ. 705 ILCS 405/5-750(1)(b)(G) (West 2018).

¶ 72 Section 5-750 of the Act reflects the legislature's reasoned judgment that a minor should only be sentenced to a term in the IDOJJ as a last possible resort. Accordingly, section 5-750 enacts numerous safeguards to ensure that result. Among these, the circuit court must find that such a sentence is the least restrictive alternative. *Id.* § 5-750(1)(b). The court must also first consider the services within the IDOJJ that may be used to address each particular minor's individualized needs. *Id.* § 5-750(1)(b)(G). The court in this case failed to fulfill each of these requirements. Accordingly, I would vacate respondent's sentence and remand the matter for resentencing.